NOTICE

Decision filed 03/16/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200332-U

NO. 5-20-0332

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| ERIC SNELLGROVE, | ) | Madison County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 19-D-935 |
| | ) | |
| RAE SNELLGROVE, n/k/a Rae Redding-McElroy, | ) | Honorable |
| | ) | Ronald J. Foster Jr., |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where the facts of this case do not support a conclusion that the claim was barred by *res judicata*, we reverse the judgment of the trial court finding the claim barred, and we remand for further proceedings consistent with this order.

¶ 2    This case began in Cass County, Illinois, when the father, Eric Snellgrove, filed both a petition to enroll a judgment from the state of Alabama and a motion to modify allocation of parental responsibilities. The mother, Rae Redding-McElroy, asked the Cass County circuit court to transfer the venue to Madison County, where she and the children reside. The trial court granted that motion. Rae filed a motion to dismiss Eric's petition on the grounds of *res judicata*. The trial court granted Rae's motion on September 14, 2020, "for good cause shown." For the reasons stated in this order, we reverse the trial court's judgment and remand for further proceedings.

1

¶ 3    We initially note that there were two motions filed by Rae that this court ordered to be taken with the case on January 27, 2021. The first motion seeks to supplement the record with the Alabama judgments, while the second motion asks this court to dismiss the appeal for lack of jurisdiction.

¶ 4    We start with the motion to supplement the record. At issue are four certified Alabama documents as follows: (1) an April 1, 2016, petition for primary custody and child support filed by Eric; (2) a certified court order dated October 24, 2018, resolving the April 1, 2016, petition; (3) a motion to amend the October 24, 2018, order *nunc pro tunc* filed by Eric; and (4) a certified court order dated November 19, 2018, granting the motion to amend the October 24, 2018, order. Because much of the factual background for this case stems from the Alabama dissolution of marriage, we find that the certified Alabama trial court documents help to present a fuller presentation of the factual background of this case. Therefore, we grant the motion to supplement the record.

¶ 5    We next turn to Rae's motion to dismiss the appeal for lack of jurisdiction. She asks this court to dismiss the appeal on the basis that Eric, who is *pro se*, cited the incorrect Illinois Supreme Court rule as the source of this court's jurisdiction. Rae does not argue that this court lacks jurisdiction but asks this court to exercise its discretion to dismiss the appeal based on Eric's citational error. See *In re D.D.*, 212 Ill. 2d 410, 416-19 (2004). Despite the error in citing to Illinois Supreme Court Rule 307 (eff. Nov. 1, 2017) as the foundation for this court's jurisdiction, we find that we do have jurisdiction to hear this appeal based on Illinois Supreme Court Rule 304(b)(6), which provides that:

> "(b) *** The following judgments and orders are appealable without the finding required for appeals under paragraph (a) [Judgments As To Fewer Than All Parties or Claims-Necessity for Special Finding] of this rule:

\* \* \*

> (6) A custody or allocation of parental responsibilities judgment or modification of such judgment entered pursuant to the Illinois Marriage and Dissolution of Marriage Act \*\*\*." Ill. S. Ct. R. 304(b)(6) (eff. Mar. 8, 2016).

Accordingly, we deny Rae's motion to dismiss this appeal on jurisdictional grounds.

¶ 6                                    I. BACKGROUND

¶ 7     On June 18, 2014, the Mobile County circuit court in Alabama entered its judgment dissolving the marriage of Eric and Rae. Two children were born during the marriage, D.S., now 8, and J.S., now 7. Rae was granted primary custody of both children; Eric was ordered to pay child support; and Eric was awarded visitation, with the meeting point for the exchanges set in Memphis, Tennessee. At the time of the divorce, Rae was living in Illinois, while Eric continued to reside in Alabama.

¶ 8     Eric filed a motion to modify this Alabama order in 2016. Specifically, Eric asked the court to modify the custodial arrangement to award primary custody of the children to him, stating that he "has been the children's primary caregiver for the majority of their life [*sic*]." The motion was heard on October 22, 2018, after which the parties, both represented by counsel, reached an agreement. On October 24, 2018, the trial court entered the agreed order denying Eric's motion to modify; granting Rae's motion to modify awarding her custody of the children; awarding Eric supervised visitation at an unspecified family counseling center in Illinois; entering judgment for child support arrearage in Rae's favor for $18,920.80; awarding fees to a guardian *ad litem*; and reaffirming all other issues from the original judgment of divorce. On November 15, 2018, Eric filed a motion asking the Alabama court to amend the October 24, 2018, order *nunc pro tunc* to specify that Rae's motion was granted as to physical custody of the children as opposed to the

3

broader "custody" term used by the court in its order. On November 19, 2018, the Alabama court granted this motion.

¶ 9     The day after the Alabama court entered its agreed-to custody order, Eric, who was then residing in Illinois, filed his *pro se* motion to modify allocation of parental responsibilities in the Cass County circuit court. Cass County is in the Fourth District of our Illinois Appellate Court. In this October 25, 2018, motion to modify, Eric alleged that one of the children "has made multiple disclosures to medical personnel involving sexual conduct involving [Rae]." Additionally, Eric alleged that, "[Rae] has been accused (by the child) of touching one of the minor children's privates in an inappropriate manor [*sic*]," and further that reports of the suspected sexual abuse had been made to three doctors: Jennifer Adair, M.D. (Mobile, Alabama), Norma Faye Pierce, Ph.D. (Mobile, Alabama), and Michael Fields, Ph.D. (Chicago, Illinois). Eric attached the October 24, 2018, Alabama custody order to the Illinois motion, and stated that the custody order had been agreed to by the parties, but that the Alabama court had not been informed about the sexual abuse allegations. He asked that the Illinois court modify both decision-making responsibilities as well as parenting time.

¶ 10    After being personally served with process, Rae hired an Illinois attorney and on February 8, 2019, filed her motion to dismiss pursuant to section 2-619(a)(4) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(4) (West 2016)). Rae asked the trial court to dismiss Eric's motion on the basis that it was barred by *res judicata* because of the October 24, 2018, Alabama custody order. Alternatively, Rae asked the Cass County circuit court to transfer venue to Madison County where she and the two children resided. The only additional facts alleged in Rae's motion to dismiss involved an incident in late August 2017, when Eric was held in contempt of court for not returning the children after a scheduled visitation. The Alabama court directed law enforcement to locate

4

and return the children to Rae. Rae alleged that based upon that incident, Eric's "criminal case for Interference with Custody has been referred to the Grand Jury of Mobile County, Alabama." Rae also argued that if Eric had evidence of sexual abuse that he had ample opportunities to present that evidence during the Alabama court proceedings.

¶ 11   On February 8, 2019, the Cass County circuit court granted Rae's motion to transfer venue to Madison County. The court did not rule upon Rae's motion to dismiss.

¶ 12   By the end of July 2019, the cases had not yet been transferred to Madison County. Eric filed a motion to reverse the transfer order on July 30, 2019, detailing information that Rae and/or her attorney had not yet paid fees to the Madison County circuit court that would have allowed the transfer to be effectuated, and that the case was listed as "rejected" in the Madison County circuit court records system. In addition, Eric alleged that Rae and her attorney were purposefully not taking steps to have the transfer effectuated to prevent the case from being heard in a court of law. Eric also stated that Rae and her attorney misstated the status of legal custody in her motions in that Rae did not have sole custody—Eric and Rae shared joint legal custody of the children. Eric's motion to reverse the transfer order was called for hearing on September 18, 2019. Neither Rae nor her attorney appeared in person. The Cass County circuit court entered a show cause order directing Rae to explain why she should not be held in indirect civil contempt for failing to appear in court and for failing to effectuate the transfer of the case to Madison County as ordered on February 8, 2019, and on August 19, 2019. On November 7, 2019, the Cass County circuit court rescinded the rule to show cause, directed the Cass County circuit clerk to resend the case to Madison County, and ordered both Eric and Rae to pay the Madison County filing fees for the transfer.

¶ 13    By January 2020, the case had been transferred to Madison County. On May 29, 2020, the Madison County circuit court held a telephone conference call. Only Eric appeared on the call. Trial was set for September 2020.

¶ 14    On July 17, 2020, Eric filed a motion *in limine* seeking supervised visitation with his children at the Family Communication Centers in Springfield, Illinois. In this motion, Eric alleged that since October 24, 2018, when the Alabama court awarded Eric supervised visitation, Rae had refused to allow him to have any visitation with his children. Rae's most recent refusal was documented in a July 14, 2020, email from Family Communication Centers to Eric about the center's attempt to set up supervised visitation for Eric. Rae responded as follows:

> "I understand you are just doing your job. But as I've told you before he will not be seeing my children until decided in court. He is a toxic person, and does not deserve to see my kids. So no that time does not work for me, nor does any other time he may come up with."

¶ 15    On August 19, 2020, Eric filed a second motion *in limine* asking the court to authorize expert witness trial testimony by use of some form of teleconference due to the Covid-19 pandemic. Eric asked the court to allow Dr. Faye Pierce and Dr. Michael Fields to testify remotely at trial.

¶ 16    The trial court entered orders on one of Eric's motions *in limine* on September 1, 2020. The trial court denied Eric's request to allow his expert witnesses to testify remotely, stating: "Experts are to be taken by deposition or appear in court for trial." The trial court reserved ruling on Eric's motion for supervised visitation, noting that the case was set for trial later that month.

¶ 17    On September 8, 2020, Eric filed his pretrial position statement with the trial court, indicating that he was asking the court to protect the children from possible ongoing and future sexual abuse. He noted that Rae had refused all requests for supervised visitation with the children for the past three years.

6

¶ 18    On September 14, 2020, the trial court held its hearing on Eric's motion to modify parental responsibilities and parenting time, as well as Rae's motion to dismiss based on *res judicata* and that there had been no substantial change of circumstances.[1] During the hearing, Rae's attorney alleged that the children used to spend two weeks with each parent, with the transfers occurring in Memphis. This agreement continued for a couple of years after the 2014 divorce. Then, Eric filed his petition to modify. Rae's attorney alleged that during one of his subsequent visitations, he absconded with the children and they were ultimately located five weeks later in Wisconsin. The trial judge asked Rae's attorney if there had been any significant change of circumstances between the date of the Alabama order (October 24, 2018) and the Cass County, Illinois, motion to modify (October 25, 2018). Rae's attorney indicated that she was aware of no changes in that one day. The trial judge then asked Eric why he filed the motion to modify one day after the order was entered in Alabama. Eric stated that what had "changed" was that the Alabama trial court had not heard evidence from the expert witnesses about the alleged sexual abuse of the two children. The trial judge then asked Eric why he did not file a motion to reconsider or appeal the October 24, 2018, Alabama order. Eric explained:

> "Because both parties, both parties at that time had resided in Illinois, and the judge after the—that he made the order on the bench said that any further issues with this case should be, since both parties were in Illinois, should fall under Illinois jurisdiction."

The trial court granted Rae's motion to dismiss on September 14, 2020.

¶ 19    Eric timely filed his notice of appeal from the trial court's September 14, 2020, order.

---

[1]Rae's *res judicata* motion filed in Cass County on February 8, 2019, makes no mention of the lack of a substantial change of circumstances. The certified record on appeal contains no amended motion. However, from the transcript of the September 14, 2020, hearing on Rae's motion to dismiss, the trial judge asked both Rae's attorney and Eric about whether there had been any substantial change of circumstances. Based upon the trial court's own questions, it appears that the trial court raised the issue *sua sponte*. In its order, the trial court characterized Rae's motion as including the substantial change of circumstances issue.

¶ 20                                II. ANALYSIS

¶ 21    Eric raises two issues on appeal. First, he argues that the trial court erred in dismissing his motion to modify based on *res judicata*. Second, Eric contends that the trial judge and Rae's attorney improperly engaged in *ex parte* communications before ruling on the motions.

¶ 22                                  *Res Judicata*

¶ 23    On appeal from a trial court's involuntary dismissal of a complaint pursuant to section 2-619 of the Code of Civil Procedure—here section 2-619(a)(4) (735 ILCS 5/2-619(a)(4) (West 2016))—the appellate court must determine "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." (Internal quotation marks omitted.) *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109-10 (1999).  The trial court must consider all well-pled facts in the complaint to be true. *Downey v. Wood Dale Park District*, 286 Ill. App. 3d 194, 200 (1997). We review a trial court's involuntary dismissal of a pleading on a *de novo* basis. *In re Estate of Mayfield*, 288 Ill. App. 3d 534, 542 (1997).

¶ 24    "*Res judicata* is separated into two distinct doctrines: (1) true *res judicata*, which is known as 'claim preclusion,' and (2) collateral estoppel, which is known as 'issue preclusion.' " *Hayes v. State Teacher Certification Board*, 359 Ill. App. 3d 1153, 1161 (2005) (citing *People v. Moore*, 184 Ill. App. 3d 102, 104 (1989), *rev'd on other grounds*, 138 Ill. 2d 162 (1990)). Although the doctrines are different, *res judicata* and collateral estoppel both serve the same purpose— "promoting judicial economy and preventing repetitive litigation." *Id.* (citing *Arvia v. Madigan*, 209 Ill. 2d 520, 534 (2004)).

¶ 25    For an action to be barred by *res judicata*, there are three requirements that must be met: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction;

8

(2) there was an identity of cause of action; and (3) there was an identity of parties or their privies." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996) (citing *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74 (1994)). "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Id.* (citing *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 294 (1992), and *Kinzer v. City of Chicago*, 128 Ill. 2d 437, 446 (1989)). "*Res judicata* precludes a party from taking more than one bite out of the same apple." *Hayes*, 359 Ill. App. 3d at 1161. Furthermore, *res judicata* serves to bar " 'all matters that were offered to sustain or defeat the claim in the first action, as well as all matters that could have been offered for that purpose.' " *Id.* (quoting *Arvia*, 209 Ill. 2d at 533). Finally, we note that the party that seeks to invoke the doctrine of *res judicata* bears the burden of proof. *Id.* (citing *Cload v. West*, 328 Ill. App. 3d 946, 950 (2002)).

¶ 26    As this case involves the doctrine of *res judicata* and not collateral estoppel, we turn to the facts of this case to determine if the three *res judicata* elements were established by Rae, who had the burden of proof on this issue. While there is no question that Rae satisfied element number three because she and Eric were the parties in the Alabama dissolution case and in the later-filed Illinois domestic case, we are not able to conclude that Rae fully satisfied the other two elements— that there was a final judgment in Alabama or that there was an identity of cause of action.

¶ 27    We first address the finality of the judgment in Alabama. In 2016, when Eric filed his motion to modify in Alabama, Rae resided with the children in Illinois and Eric lived in Alabama. At some point after he filed the motion to modify in 2016, Eric moved to Illinois, where he resided on October 24, 2018, the date that the Alabama trial court entered its judgment denying his motion to modify. Based upon the limited facts contained in this record on appeal, it is possible that the

9

state of Alabama did not have continuing exclusive jurisdiction over the Snellgrove child custody issues. See Ala. Code § 30-3B-202 (1975) (stating that when an Alabama court made an initial child custody determination, it has continuing, exclusive jurisdiction over the determination until an Alabama court determines that the children and the parents no longer reside in Alabama). The October 24, 2018, Alabama judgment was apparently something that the parties had agreed to, and there is nothing in the record on appeal that indicates that the Alabama court was aware that none of the parties were living in Alabama at the time that the court entered the order. However, from Eric's answer to the Madison County judge's question, the Alabama judge allegedly stated that any further proceedings had to be in Illinois for jurisdictional purposes. We are concerned that because the Alabama court may have lost its continuing jurisdiction over the parties and the custody issues, there is at least an issue about the validity and thus the finality of the Alabama judgment.

¶ 28     We next address the issue of the identity of the causes of action. While it would be easy to resolve the question on the basis that both of Eric's motions sought a modification of "custody," that is not an accurate description of the Illinois petition. In response to questions, Eric informed the Madison County trial judge that the Alabama judge had not seen or heard any evidence of the allegations of sexual abuse of the minor children. Those allegations were not addressed in the October 24, 2018, Alabama judgment. Furthermore, Eric stated that the Alabama judge told him that any future modifications had to take place in the Illinois court system. Eric filed his motion to modify allocation of parental responsibilities in Cass County, Illinois, the very next day. This Illinois petition appropriately cites the Illinois statutes regarding the division of parental responsibilities and parenting time. Rae's attorney acknowledged to the Madison County trial judge that the Alabama family law system was not identical to that currently utilized in Illinois in

10

that there was nothing specified about the division of parental responsibilities for the children. Accordingly, although the motions in Alabama and Illinois both involved the Snellgrove children, the specific content and the relief sought is not identical.

¶ 29   We conclude that Rae did not establish that the doctrine of *res judicata* applied in this case. In addition to Rae's failure to establish *res judicata*, we find that based upon the facts of this case, Rae's attempted enforcement of the *res judicata* doctrine was factually problematic and unjust. The record establishes that Rae unilaterally decided to impede the October 24, 2018, Alabama judgment, where Eric was awarded supervised visitation in Illinois. Although she chose to be willfully noncompliant with that judgment, she attempted to use that judgment via the doctrine of *res judicata* to bar Eric's attempts to obtain parental responsibility and parenting time. Although Rae did not testify in court to identify the message that she sent to the Family Communication Centers in Springfield, that printout, attached as an exhibit to Eric's July 17, 2020, *in limine* motion seeking supervised visitation, is in the record on appeal. That message reflected a particularly obstructive attitude in that Rae allegedly stated that "as I've told you before he will not be seeing my children until decided in court." In short, Rae did not consider the Alabama judgment as final and binding. Furthermore, we note that although Eric had the October 24, 2018, order awarding supervised visitation, as of September 14, 2020, when the trial court held its hearing on the Illinois motions, Rae had not allowed Eric to engage in the court-awarded supervised visitation.

¶ 30   On remand, the trial court should address the October 25, 2018, petition, or Eric may decide to file a new motion to modify due to the trial court's concern that there was no substantial change in circumstances from October 24, 2018, to October 25, 2018. Section 610.5(a) of the Illinois Marriage and Dissolution of Marriage Act provides:

> "no motion to modify an order allocating parental decision-making responsibilities, not including parenting time, may be made earlier than 2 years after its date, unless the court

11

permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his or her mental, moral, or physical health or significantly impair the child's emotional development. Parenting time may be modified at any time, without a showing of serious endangerment, upon a showing of changed circumstances that necessitates modification to serve the best interests of the child." 750 ILCS 5/610.5(a) (West 2016).

From the record on appeal, it does not appear that Eric attached any affidavits to his *pro se* motion to modify as filed on October 25, 2018, and thus he may be required to amend that motion or begin anew. Given the nature of the allegations made by Eric, coupled with the apparent support of the child's former pediatrician,[2] we remand for further proceedings consistent with the statutory requirements of the Illinois Marriage and Dissolution of Marriage Act. This case has been dominated by Eric's indeterminate allegations against Rae that were for some reason not brought to the attention of the Alabama court, and yet Eric claims that all attorneys in Alabama were aware of the allegations. While we understand that the Madison County circuit court found these "facts" to be confounding, the court system must keep the best interests of the children to be of the utmost importance.

¶ 31 *Ex Parte* Communications

¶ 32 As we have reversed and remanded the trial court's judgment on issue one, we decline to address the merits of this second issue.

¶ 33 III. CONCLUSION

¶ 34 For the reasons stated in this order, we reverse the judgment of the Madison County circuit court and remand with directions.

---

[2]Attached to Eric's reply brief on appeal is a copy of what appears to be a written confirmation of suspected child abuse on an Illinois Department of Children and Family Services form. The report was prepared and signed by Jennifer Adair, M.D., an Alabama pediatrician who examined and treated the child in question and who, according to the report, suspected that Rae was sexually abusing the child. The report is dated August 2, 2017. The document is not certified.

¶ 35     Reversed and remanded with directions.